[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10303

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KEMOND JAREUZ FORTSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:18-cr-00416-WKW-SMD-1

_____

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

A jury convicted Kemond Fortson of possession of a firearm by a felon, possession of methamphetamine with intent to distribute, and possession of a firearm in furtherance of a drug trafficking crime. Fortson appeals the district court's denials of his motion to suppress evidence found in his apartment and car and his motion for judgment of acquittal on the firearms counts, and the substantive reasonableness of his 140-month sentence. We affirm his convictions and sentence.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### The Arrest

On March 10, 2009, while stealing marijuana and a gun, Fortson and his brother Lorenzo shot and killed a man. Fortson pleaded guilty to murder and was sentenced to twenty-five years in state prison, with five to be served and the remaining twenty suspended. He was on probation for the murder when, on October 31, 2017, officers with the United States Marshals Service Gulf Coast Regional Fugitive Task Force executed a warrant for his arrest for a probation violation.

Officers executed the arrest warrant at the apartment where Fortson lived with his then-girlfriend, Shakea Green. Inside the apartment, officers saw about forty grams of methamphetamine scattered on the floor of the master bedroom, leading into the

bathroom, and inside the toilet. Officers also saw a bag of marijuana, digital scales, and an electronic key fob, which when pressed, activated the alarm to a car parked outside the apartment.

Officers then got a search warrant for the apartment and car. From inside the apartment, officers seized the methamphetamine, marijuana, digital scales, and key fob, as well as alprazolam, clonazepam, hydrocodone, nearly two thousand dollars, and a receipt for a gun trade. The receipt was dated September 4, 2017, and was signed by Jeff Clarkson.

From the car parked outside the apartment, officers seized methamphetamine, digital scales, plastic baggies, a loaded DPMS AR-15 .223 millimeter / 5.56 millimeter caliber rifle, and a Ruger 9 millimeter pistol. Fortson stipulated that the Ruger pistol and all of the ammunition in this case had moved in interstate commerce. During the search, after Fortson's arrest, he told Agent Angel Rodriguez—with no prompting—that "he could provide the name of the source of supply for his methamphetamine."

The grand jury indicted Fortson on one count of possession of a firearm by a felon, in violation of 18 U.S.C. section 922(g)(1); one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. section 841(a)(1); and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. section 924(c)(1)(A).

*Fortson's Motion to Suppress*

Fortson moved to suppress the evidence seized from the apartment and car, and the "source of supply" statement that Fortson made during the search. As to the evidence from the apartment, Fortson argued that the officers arrested him "just inside the door to the apartment," "had no search warrant," and "had no authority to search the apartment." As to the evidence from the car, Fortson contended that the officers' pushing of the car's key fob was an illegal search, and the officers searched the car before they had a search warrant. And, as to the "source of supply" statement, Fortson maintained that he made it during "an illegal search," so it should be "suppressed as fruit of the poisonous tree."

As to the evidence from the apartment, the government responded that Fortson's "claims as to what occurred . . . [we]re simply untrue": officers found the evidence in plain view as they executed the arrest warrant. As to the evidence from the car, the government argued that the pushing of the key fob was not a search, and even if it was, the automobile exception applied. And, as to the "source of supply" statement, the government contended that it should not be suppressed because officers were not questioning Fortson when he volunteered it.

Officer Dustin Holt and Agents Rodriguez and Dion Robinson testified about the search for the government. Officer Holt and Agent Robinson were both members of the task force and were present when Fortson was arrested. Agent Rodriguez came to the apartment after the arrest and collected evidence.

All three government witnesses testified to the location of the methamphetamine. Officer Holt testified to seeing methamphetamine on the floor of the hallway and bathroom. But, according to Agent Rodriguez, the methamphetamine was on the floor "from the bedroom leading into the bathroom," as well as "inside the toilet bowl" and "on the toilet floor." Agent Rodriguez also testified that "[t]he quantity of drugs inside the apartment . . . was not user quantity, personal quantity." Agent Robinson testified that the drugs were found "[i]n the back bedroom" and that "the drug evidence was a trail from the bedroom to the bathroom inside the toilet."

As to the location of Fortson's arrest, Officer Holt testified that before the arrest an officer reported "movement from the blinds of a bedroom window," and when officers knocked and announced their presence and purpose to arrest Fortson, Fortson's girlfriend opened the door and said that Fortson was "in the back bedroom." On direct examination, Officer Holt testified that Fortson was in the "back left bedroom" when Officer Holt found him, but on cross examination, Officer Holt appeared less confident in this response. He said that if a report gave Fortson's location as "immediately behind the door in the living room," he would not have "any reason to dispute" the report. He said that even though he thought Fortson was "in the back bedroom," he "could have been mistaken" and Fortson "could have been in the front living room."

Agent Robinson testified that as the officers walked up the steps to the apartment to make the arrest they "saw the blinds open up in the rear portion of the apartment." Once at the door, they knocked and announced themselves "several times," and Fortson's girlfriend answered. She "eventually" gave Fortson's location as "in the back bedroom." Agent Robinson listened from "[o]utside the apartment at the front door" with the girlfriend while the task force's entry team said, "clear," at each room after checking it. He heard the team clear the front doorway and closet, the living and dining rooms, and the kitchen, and then "immediately afterwards," they "were talking to someone down at the end of the hallway." Agent Robinson heard over the radio that Fortson was in custody, and officers told Agent Robinson that they arrested Fortson "[i]n the hallway area of the back bedroom." The arresting officers saw the methamphetamine in plain view when they took Fortson into custody, Agent Robinson said.

In defense, Fortson's girlfriend, Ms. Green, and his attorney, Michael Kidd, testified that the arrest occurred in the living room in the front area of the apartment. Ms. Green was eighteen years old when Fortson was arrested, and they had been "boyfriend and girlfriend" for "almost two years." In fact, the two were still in a relationship when she testified. According to Ms. Green, they "talk[ed] often" but did not talk about his case. She found out about the suppression hearing the week before she testified, she said, but she could not remember how she came to testify and did

not know what the hearing would be about. Mr. Kidd represented Fortson in the state probation violation matter.

Ms. Green testified that the apartment had no windows or blinds in the rear. She and Fortson "were in the living room" when the officers knocked, and when she opened the door, she "could feel [Fortson] standing right behind" her. She "heard [Fortson's] voice the whole time"; "[h]e was right there while [she was] outside the door." She never saw him leave the living room area and never told officers where he was because officers never asked her his location.

Mr. Kidd testified that "[d]uring the course of [his] investigation [into the probation violation matter], drawing from all the sources that [he] talked to, [he] was never under the impression that Fortson was anywhere other than somewhere close to the couch in the living room at the time of entry," and that, according to Mr. Kidd's notes, Fortson and Ms. Green were lying down "on the couch when the police officers came and knocked," and Fortson was arrested "next to [the] keys to [the] car" "somewhere in the living room." Mr. Kidd could not identify who told him where the arrest occurred because he received information "from a lot of different people," including Ms. Green, and it was difficult "to separate what information came from what person."

The other facts were undisputed. Agent Rodriguez testified that Fortson's mother "was actually renting the apartment or paying for the apartment," so the officers "had to ascertain while in the apartment" that Fortson, not his mother, was living there.

According to Officer Holt, "all the rooms were cleared for people and weapons for [officer] safety." Agent Rodriguez stated that after he collected the evidence and before he went for the search warrant, he read Ms. Green and Fortson their *Miranda*[1] rights and told them that officers had found drugs in the apartment. After the rooms were cleared and Fortson was arrested, Officer Holt stated, both Fortson and Ms. Green "denied having a car," so when Officer Holt saw the key fob on the kitchen counter, he picked it up, went outside, and pushed the lock button to locate the car associated with the fob. About the car, Agent Rodriguez testified, someone— either a task force officer or Ms. Green herself—told him that Ms. Green and Fortson traveled in the car "as recently as the previous week." Agent Rodriguez also testified that after he returned with the search warrant for the apartment and car, Fortson offered— outside of Ms. Green's presence—to provide "the source of supply" of the methamphetamine if the officers released them.

After considering all the testimony, the magistrate judge recommended denying Fortson's motion to suppress "as to all evidence found in the apartment as part of the protective sweep and as part of the search conducted pursuant to a search warrant," "all evidence found as a result of the search of the vehicle," and "all statements made by [Fortson]." The magistrate judge found that "the methamphetamine was located on the floor of the master bedroom, the master bathroom, and in the master bathroom toilet,"

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

as Agents Rodriguez and Robinson testified, and not "on the floor of the hallway and hallway bathroom," as Officer Holt testified. The magistrate judge also found, based on Officer Holt and Agent Robinson's testimony and the location of the methamphetamine, that Fortson was arrested "in the rear area of the apartment," meaning the area containing the hallway, bedrooms, and bathrooms, "and not in the living room, dining room, kitchen, or foyer." Giving Fortson "the most leeway under the protective sweep doctrine," the magistrate judge found that Fortson was arrested at "the mouth of the hallway that open[ed] into the front area of the apartment." The magistrate judge did not credit Ms. Green's testimony about the location of Fortson's arrest because Ms. Green was biased toward Fortson, did not witness the arrest, and gave "less-than-forthcoming answers" during cross examination. And the magistrate judge did not credit Mr. Kidd's testimony about the arrest's location because Mr. Kidd did not provide the source of his information.

These factual findings led the magistrate judge to conclude that the evidence found in the apartment without a search warrant was lawfully seized in plain view during a valid protective sweep as the officers were executing the arrest warrant. The magistrate judge also concluded that the officers' use of the key fob was reasonable because the "officers reasonably suspected that criminal activity was afoot" from the amount of drugs found in the apartment and the inconsistency between Fortson and Ms. Green's denial of having a car and the presence of the key fob in their apartment.

The use of the key fob, the magistrate judge recommended, "was also justified under the automobile exception." And the magistrate judge concluded that probable cause supported the search warrant for the apartment and car.

The district court overruled Fortson's objections to the magistrate judge's recommendation because the magistrate judge's findings about the witnesses' credibility and the locations of the methamphetamine and Fortson's arrest were "detailed, well-reasoned, and supported by the testimony." The conclusion that the evidence was seized during a valid protective sweep followed from these findings, the district court explained. And the district court agreed with the magistrate judge that the officers' use of the key fob was reasonable and also justified under the automobile exception. Thus, after de novo review, the district court adopted the magistrate judge's recommendation.

*Fortson's Motion for Judgment of Acquittal*

The case proceeded to a two-day jury trial. During the government's case-in-chief, Officer Holt, Agent Rodriguez, and Mr. Clarkson testified. Officer Holt testified to arresting Fortson in the back bedroom and, along the way, seeing methamphetamine on the floors of the hallway and bathroom. Agent Rodriguez testified that the methamphetamine found in the apartment had a total value of four thousand dollars and the brand of digital scales in the master bedroom was "used to weigh narcotics most often." Through his testimony, Agent Rodriguez tied the key fob found "inside the apartment" to the car parked outside the apartment.

The AR-15 rifle found in the car "would fit" within a gun case found in the master bedroom, Agent Rodriguez said, and he collected from the kitchen a bullet that would fit that gun. In the same box in the trunk of the car where the AR-15 rifle was, there were the Ruger pistol, a magazine with three bullets for the Ruger, methamphetamine in a baggie, other baggies, a set of scales, and a set of weights, Agent Rodriguez testified. Agent Rodriguez also testified that the box in the trunk was for a Dirt Devil vacuum cleaner and that he found a matching Dirt Devil vacuum in the apartment.

Mr. Clarkson identified the receipt found in the apartment and testified that, for an SKS 7.62 millimeter rifle and five hundred dollars, he had traded an AR-15 rifle, along with a plastic padded gun case, 5.56 millimeter ammunition, a scope, and two thirty-round magazines, to a man matching Fortson's general description. Mr. Clarkson identified the AR-15 found in the car, and testified that its serial number matched the serial number on the AR-15 that he had traded. Mr. Clarkson also testified that the 5.56 millimeter ammunition and the magazine found in the car were consistent with the AR-15 and that the gun case found in the apartment "appear[ed] to be" the same gun case that he had traded. And Mr. Clarkson testified that law enforcement had him do a photo lineup to identify the man with whom he had traded.

Agent Rodriguez then testified that the 5.56 millimeter ammunition that Mr. Clarkson gave Agent Rodriguez "was very similar to" ammunition that Agent Rodriguez found in the apartment's

kitchen.  And Agent Rodriguez testified that Mr. Clarkson identified Fortson in the photo lineup.

At the close of the government's case-in-chief and again at the close of all evidence, Fortson moved for judgment of acquittal on the firearms counts.[2]  As to the count of possession of a firearm by a felon, Fortson argued that the Ruger pistol charged in the indictment was found in a box in the trunk of the car and the government presented no evidence placing him in the car or in possession of the gun.  And as to the count of possession of a firearm in furtherance of a drug trafficking crime, Fortson argued that the government did not prove a drug trafficking crime, and even if it did, it presented no evidence tying him to the car, where the firearms were found.  The district court denied Fortson's judgment of acquittal motion, and the jury found Fortson guilty of the firearms counts and the methamphetamine count.

## Fortson's Sentence

Fortson's guideline range was between seventy-eight and ninety-seven months for possession of a firearm by a felon and possession with intent to distribute methamphetamine, plus sixty months for possession of a firearm in furtherance of a drug trafficking crime to be served consecutively.  Fortson argued for a below-guideline sentence of 120 (sixty plus sixty) months in prison

---

[2] Fortson moved for judgment of acquittal on the other counts, too, but they are not at issue on appeal.

because he had only two firearms when the officers conducted their searches, his only violent crime was the murder, and his drug use impaired his decisionmaking.

The district court "considered and consulted the sentencing guidelines and the arguments of counsel and evaluated the reasonableness of [Fortson's] sentence through the lens of [18 U.S.C. s]ection 3553." Then, it imposed a sentence at the low end of the guideline range: 140 (eighty plus sixty) months. The district court found that this sentence was "reasonable" in light of "the nature and circumstances of the offense[s]" and Fortson's "history and characteristics" and was "sufficient, but not greater than necessary," to "reflect the seriousness of the offense[s]," "promote respect for the law," "provide just punishment for the offense[s]," "afford adequate deterrence to criminal conduct," "provide [Fortson] with needed educational or other correctional treatment in the most effective manner," and "avoid unwarranted sentence disparities among defendants."

## STANDARDS OF REVIEW

When a district court denies a motion to suppress evidence, "we review the court's findings of fact for clear error and its application of law to the facts de novo. In doing so, we consider all the evidence in the light most favorable to the prevailing party—in this case, the government." *United States v. Wilson*, 979 F.3d 889, 908 n.9 (11th Cir. 2020) (cleaned up). The "district court's factual findings will not be overturned unless, upon reviewing the record, we are left with a definite and firm conviction that a mistake has been

made." *Id.* "The party moving to suppress evidence bears the burdens of proof and persuasion." *Id.*

"We review de novo the district court's denial of a motion for judgment of acquittal, but 'our evaluation is comparable to the standard used in reviewing the sufficiency of the evidence to sustain a conviction.'" *United States v. Henderson*, 893 F.3d 1338, 1348 (11th Cir. 2018) (quoting *United States v. Bergman*, 852 F.3d 1046, 1060 (11th Cir. 2017)). "Under that standard, we review the evidence presented at trial in the light most favorable to the government, and we draw all reasonable factual inferences in favor of the jury's verdict." *Id.* (quoting same). "We will not overturn a jury's verdict if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.* (cleaned up).

"We review for abuse of discretion the substantive reasonableness of a sentence." *United States v. Osorto*, 995 F.3d 801, 822 (11th Cir. 2021). "In reviewing the ultimate sentence imposed by the district court for reasonableness, we consider the final sentence, in its entirety, in light of the [section] 3553(a) factors." *United States v. Thomas*, 446 F.3d 1348, 1351 (11th Cir. 2006). "Our 'review for reasonableness is deferential.'" *Id.* (quoting *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)). "The party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both the record and the factors in section 3553(a)." *Id.* (quoting same).

## DISCUSSION

Fortson argues that the district court erred in denying his motion to suppress the evidence found in his apartment; his motion to suppress the evidence found in his car; and his motion for judgment of acquittal on the firearms counts. Fortson also contends that his sentence was substantively unreasonable.

*The Motion to Suppress the Evidence from the Apartment*

Fortson contends that the district court clearly erred in finding that he was arrested in the rear area of the apartment and in concluding that the officers were thus entitled under *Maryland v. Buie*, 494 U.S. 325 (1990), to sweep that area without reasonable suspicion. He was arrested in the living room in the front area of the apartment, he says, so the sweep of the rear area was an illegal search and the evidence found during the sweep should have been suppressed.

We do not have "a definite and firm conviction" that the magistrate judge erred in finding that Fortson was arrested in the rear area of the apartment or that the district court erred in adopting this finding. *See Wilson*, 979 F.3d at 908 n.9. Both Officer Holt and Agent Robinson testified during the suppression hearing that Fortson's girlfriend said Fortson was "in the back bedroom" when the task force officers knocked and announced themselves, and Agent Hill testified that the girlfriend said Fortson was "in the back of the apartment." Officer Holt also testified that he found Fortson in the "back left bedroom" during the arrest. Although Officer

Holt conceded during cross examination that he would defer to a report giving a different arrest location, no such report was ever entered into the record. When Officer Holt testified at trial, he was "confident" that Fortson "was in the back bedroom." Agent Robinson testified during the suppression hearing that Officer Holt and another officer had told him that the arrest occurred "[i]n the hallway area of the back bedroom." Agent Robinson also gave earwitness testimony that Fortson was arrested in the rear area of the apartment. Based on this testimony, and on the location of the methamphetamine in the master bedroom and bathroom, the magistrate judge found that Fortson was arrested "in the rear area of the apartment." This finding was not clearly erroneous.

Because the district court found that Fortson was arrested in the rear area of the apartment, the evidence that the officers recovered from that area is admissible under the protective sweep doctrine. "Law enforcement officers are permitted, in the context of a valid arrest, to conduct a protective sweep of a residence for officers' safety," but the "sweep must be brief and limited to areas from which an attack could be launched." *United States v. Yeary*, 740 F.3d 569, 579 (11th Cir. 2014). During an arrest, officers can, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334.

Here, the magistrate judge assumed that Fortson was arrested "farthest . . . away from the master bedroom but still in the

rear area of the apartment"—that is, at "the mouth of the hallway that open[ed] into the front area of the apartment." The officers were entitled to enter the master bedroom as an area immediately adjoining the hallway from which an attack could arise. *See United States v. Thomas*, 429 F.3d 282, 287 (D.C. Cir. 2005) ("Because the entrance to the bedroom was a straight shot down the hallway from the spot where [the defendant] was arrested, the bedroom was a place 'immediately adjoining the place of arrest from which an attack could be immediately launched.'" (quoting *Buie*, 494 U.S. at 334)). As the government points out, "officers were entering an apartment they were unfamiliar with to serve an arrest warrant on a man who had previously been convicted of murder." They were permitted to sweep the immediately adjoining area for their own safety. Once in the master bedroom, the officers saw methamphetamine in plain view.

Because the search of the apartment was valid under the protective sweep doctrine, the district court did not err in denying Fortson's motion to suppress the evidence found inside the apartment.

### The Motion to Suppress the Evidence from the Car

As to the evidence found in the car, Fortson argues that the district court erred in failing to suppress it because officers used the key fob found in the apartment to locate the car before they had a search warrant for the apartment, Fortson had a reasonable expectation of privacy in the key fob and the car, and the warrant for the car should not have issued. The warrant should not have issued,

he contends, because there were no drugs or firearms in plain view in the car and because no officer applying for the warrant had seen him in possession and control of the car.

The magistrate judge found, based on Officer Holt's testimony, that "[Fortson] and [Ms.] Green denied having a vehicle on the premises." This fact was undisputed, and this finding was not clearly erroneous. "[D]isclaiming ownership . . . of an item ends a legitimate expectation of privacy in that item." *United States v. Hawkins*, 681 F.2d 1343, 1345 (11th Cir. 1982). "[A]n individual who . . . denies ownership of personal property may not contest the constitutionality of its subsequent acquisition by the police." *United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001). Because Fortson denied owning the car, he cannot challenge as unconstitutional the officers' use of the key fob for the car, the search of the car, or the seizure of the evidence found inside the car. Thus, the district court did not err in denying Fortson's motion to suppress the evidence found in the car.

*The Motion for Judgment of Acquittal*

Fortson argues that the district court erred in denying his motion for judgment of acquittal on the firearms counts. Fortson contends that the government did not prove beyond a reasonable doubt one element common to both counts—that he knowingly possessed a firearm—because no witness put him in the car when the firearms were found in it and because no firearms were found in the apartment. The government, Fortson maintains, "only presented speculative evidence that because the keys to the vehicle

were in the residence that . . . [he] must have knowingly possessed the firearms located in the vehicle."

For violations of 18 U.S.C. sections 922(g) and 924(c), "[p]ossession of a firearm may be . . . constructive." *United States v. Ochoa*, 941 F.3d 1074, 1104 (11th Cir. 2019); *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011). "In order to establish constructive possession, the government was required to prove, through direct or circumstantial evidence, that [Fortson] was aware or knew of the firearm's presence and had the ability and intent to later exercise dominion and control over the firearm." *Ochoa*, 941 F.3d at 1104. "[C]ontrol or domination over [a] vehicle in which . . . contraband is concealed . . . support[s] a finding of possession" of the contraband. *United States v. Riggins*, 563 F.2d 1264, 1266 (5th Cir. 1977).

Agent Rodriguez testified at trial that he found a Dirt Devil vacuum cleaner in the apartment and then found a Dirt Devil vacuum cleaner box in the trunk of the car. Agent Rodriguez also testified that the key fob found in the apartment activated the car, and Mr. Clarkson testified that the gun trade receipt found in the apartment was for one of the guns in the car. This testimony tied the car—which contained guns, magazines, ammunition, methamphetamine, and drug distribution equipment in the vacuum cleaner box in the trunk—to the apartment where Fortson lived with his girlfriend—which contained more methamphetamine and drug distribution equipment, as well as a bullet and a gun case fitting one of the guns found in the car. Further, Mr. Clarkson

testified to trading a gun to a man matching Fortson's general description, and again, the receipt documenting this trade was found in Fortson's apartment while the gun itself was found in his car. From all this evidence, the jury could have found that Fortson had control over the car in which the firearms were concealed and that Fortson knowingly possessed the firearms.

Because a "reasonable construction of the evidence would have allowed the jury" to find beyond a reasonable doubt that Fortson knowingly possessed a firearm—and thus, "to find [him] guilty beyond a reasonable doubt" as to the firearms counts—we will not overturn the jury's verdict as to these counts. *See United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013).

*The Substantive Reasonableness of the Sentence*

Finally, Fortson challenges the substantive reasonableness of his sentence, arguing that imprisonment for 140 months was greater than necessary to accomplish the purposes in section 3553(a) and that the district court did not properly consider the mitigating factors he raised at the sentencing hearing. He also contends that the "nature and circumstances" of the offenses charged in the indictment and the "lack of evidence" supporting each offense "weighed heavily" toward a lesser sentence, but "the only factor weighed by the court was the sentencing guidelines." The district court failed to give reasonable consideration to any other section 3553(a) factor, Fortson argues.

"We examine whether a sentence is substantively unreasonable in light of the [section] 3553(a) factors and the totality of the circumstances." *United States v. Joseph*, 978 F.3d 1251, 1265 (11th Cir. 2020). The section 3553(a) factors include: (1) the "nature and circumstances" of the offenses and the "history and characteristics of the defendant"; (2) the need to "reflect the seriousness" of the offenses, "promote respect for the law," and "provide just punishment" for the offenses; (3) the "need for deterrence"; (4) the "need to protect the public"; (5) the "need to provide the defendant with needed educational or vocational training or medical care"; (6) the "kinds of sentences available"; (7) the "Sentencing Guidelines range"; (8) "pertinent policy statements of the Sentencing Commission"; (9) the "need to avoid unwarranted sentencing disparities"; and (10) the "need to provide restitution to victims." *Id.* at n.17 (citing 18 U.S.C. § 3553(a)). "The weight given to any particular [section] 3553(a) factor is within the district court's discretion, and [we] will not substitute [our] judgment for that of the district court." *Id.* at 1266. "We will reverse a sentence only if we are 'left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [section] 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *Id.* (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).

Fortson's drug and gun crimes were serious. "[D]rugs and guns are a dangerous combination," *Smith v. United States*, 508 U.S. 223, 240 (1993), "especially . . . when they are in close

proximity" to each other, *United States v. Martinez*, 964 F.3d 1329, 1338 (11th Cir. 2020). And the offenses prohibiting them are serious. *See United States v. Haile*, 685 F.3d 1211, 1222 (11th Cir. 2012) ("Given the serious nature of possessing a machine gun in furtherance of drug-trafficking crimes, [the] [thirty]-year statutory mandatory minimum sentence . . . [wa]s not grossly disproportionate to the offense.").

Fortson was a convicted murderer, and he was on probation while he was dealing drugs and trading guns.

The sentence "falls at the low end" of the guidelines range, and we "generally anticipate that a sentence within the [g]uidelines range is reasonable." *Osorto*, 995 F.3d at 823.

The statutory maximum for possession of a firearm in furtherance of a drug trafficking crime is life in prison. *See United States v. Pounds*, 230 F.3d 1317, 1319 (11th Cir. 2000) ("[E]very conviction under [section] 924(c)(1)(A) carries with it a statutory maximum sentence of life imprisonment . . . ."). And Fortson's sentence "falls well below" this maximum. *See Osorto*, 995 F.3d at 823. "A sentence that comes in far below the statutory maximum penalty is another indicator of reasonableness." *Id.*

Contrary to Fortson's argument on appeal, the district court considered not only the guidelines but also counsel's arguments (including those on mitigating factors) and the section 3553(a) factors. "[T]he district court need only acknowledge that it considered the [section] 3553(a) factors, and need *not* discuss each of these

factors in either the sentencing hearing or in the sentencing order." *United States v. Beckles*, 565 F.3d 832, 846 (11th Cir. 2009) (quoting *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007)).

For all these reasons, we do not have a "definite and firm conviction that the district court committed a clear error of judgment" in sentencing Fortson in light of the section 3553(a) factors. *See Joseph*, 978 F.3d at 1266. We discern no abuse of discretion in the district court's sentencing decision, so we affirm the sentence.

## CONCLUSION

Because the district court did not err in denying Fortson's motion to suppress or motion for judgment of acquittal or in imposing his sentence, we affirm.

**AFFIRMED.**